IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| CONRAD SCHILLING,<br><br>Plaintiff,<br><br>vs.<br><br>MIKE FERRITER, DR. PIRANIAN, CHELSEE JAHNER, SHELLY MODERIE,<br><br>Defendants. | Cause No. CV 11-00028-H-DWM-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DISMISS CASE |

Pending is Plaintiff Conrad Schilling's Amended Complaint. C.D. 10. Review under 28 U.S.C. §§ 1915(e)(2) and 1915A demonstrates the Amended Complaint fails to state a claim upon which relief may be granted. This matter should be dismissed.

This action presents a federal question over which jurisdiction lies pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), and 42 U.S.C. § 1983.

## I. STATEMENT OF CASE

### A. PARTIES

Mr. Schilling is a prisoner proceeding without counsel. He is incarcerated at Montana State Prison in Deer Lodge, Montana. The defendants named in the original and Amended Complaint are Mike Ferriter, Director of the Montana

Department of Corrections and the following medical providers at Montana State Prison: Dr. Piranian, Nurse Chelsee Jahner, and Nurse Shelly Moderie. C.D. 10, p. 3. In his Amended Complaint, Mr. Schilling also names Security Major Woods, First Shift Captain Clark, Assistant Warden Beesen, and Disciplinary Hearing Officer Ken Cosby. C.D. 10, pp. 3-4.

### B. FACTUAL ALLEGATIONS

The factual allegations were set forth in detail in the Court's first order and will not be repeated herein. To the extent Mr. Schilling has provided additional factual allegations those will be included in the analysis of each claim.

## II. SCREENING PER 28 U.S.C. §§ 1915(e)(2), 1915A

As Mr. Schilling is a prisoner proceeding in forma pauperis, this Court must review his claims under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A to determine if the allegations are frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. Mr. Schilling's medical care claims will be addressed first followed by his procedural due process claims.

### A. Medical Care Claims

To state an Eighth Amendment claim for failure to provide medical care, a prisoner must allege that a defendant's "acts or omissions [were] sufficiently

harmful to evidence a deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). A plaintiff may demonstrate deliberate indifference by "showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) citing McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1991).

### 1. Medical Care after September 2010 Stabbing--Dr. Piranian

Mr. Schilling alleges he was stabbed in the throat on September 25, 2010 and underwent surgery at St. James Hospital later that evening. On September 28, 2010, after he had been transferred back to the prison, Mr. Schilling alleges he was placed in secure detention "disciplinary segregation." He faults Dr. Piranian for failing to carry out post-surgery medical care while he was in disciplinary segregation.

There is still no plausible medical care claim in the facts alleged regarding Mr. Schilling's placement in the disciplinary segregation unit after his alleged stabbing. In the original complaint, Mr. Schilling admitted Dr. Piranian visited Mr. Schilling in "the hole" and he told Mr. Schilling to "kite" him if there were any problems. C.D. 2, p. 4. In the Amended Complaint, Mr. Schilling also stated that

a nurse visited his cell once every twelve hours for a "pill pass" to distribute medication.

Mr. Schilling alleges he had difficulties eating and speaking, but these problems appear to have arisen from the stabbing incident and not the placement in disciplinary segregation. He also contends he did not have immediate access to a nurse's care in disciplinary segregation. Even taking all of his allegations as true, as required to do here, Mr. Schilling has not alleged that he suffered medical harm as a result of his placement in disciplinary segregation. In order to establish deliberate indifference, Mr. Schilling must allege some harm was caused by Defendants' action or inaction. See Jett, 439 F.3d at 1096 citing McGuckin, 974 F.2d at 1060. This he has not done. Therefore, this claim will be recommended for dismissal.

## 2. Medical Care for Shoulder–John Does and Nurses

Mr. Schilling alleges that on April 4, 2011 at approximately 6:00 p.m. he was working out in his cell when he slipped off his bunk after doing a type of shoulder press and dislocated his shoulder. He says he immediately began yelling for medical help but was told he would have to wait until the nurse came at 8:30 p.m. At 8:30 p.m., Mr. Schilling alleges the nurse told him she would try to get him up to the infirmary. He was taken to the infirmary at 9:45 p.m.

At the infirmary, Mr. Schilling alleges L.P.N. Moderie told him to sit up straight and let go of his arm, but he told her he could not do so. She argued she was observing Schilling and asked him what was wrong. He told her he had dislocated or broke his shoulder. Mr. Schilling states the Nurses asked him questions about his pain level and he said it was a ten on a ten-point scale.

Mr. Schilling next alleges L.P.N. Moderie told him it was a muscle cramp and he began to argue with her about whether his shoulder could be dislocated. The Nurses reportedly told Mr. Schilling he was fine and that he could see the doctor in the morning, and gave him 16 Ibuprofen.

Mr. Schilling contends he continued to ask for assistance from the officers after returning to his cell, but was told by Captain Clark that the nurses had already seen him. He continued to beg for medical help through the entire shift. As set forth in his original complaint, Mr. Schilling says he was taken to the hospital at approximately 11:20 the next morning where he was put under anaesthesia so they could relocate his shoulder. C.D. 2, p. 4.

Taking all of Mr. Schilling's allegations as true, there are still not sufficient facts to state an Eighth Amendment denial of medical care claim. This is not a situation where Mr. Schilling's medical condition was ignored. The John Doe Officers knew a nurse was coming to the lock-down area in a couple hours and

simply waited for her to do an assessment there. Nurses Moderie and Jahner saw Mr. Schilling at 9:45 p.m., they attempted an assessment of his shoulder, diagnosed it as a muscle cramp, and provided pain medications. Even if the Nurses were incorrect in their diagnosis, such behavior is insufficient to establish deliberate indifference. Ordinary medical malpractice is not enough to state an Eighth Amendment claim. Estelle, 429 U.S. at 106. A difference of opinion between medical professionals and the prisoner concerning the appropriate course of treatment does not amount to malpractice, much less deliberate indifference. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

These claims will be recommended for dismissal.

### 3. Director Ferriter

Lastly, Mr. Schilling seeks to hold Director Ferriter liable for denying his grievances regarding physical therapy. He states that after the surgery for his stabbing wound, he had unexplainable discomfort, uncontrollable neck and head cramps, and head and neck tics. He claims his requests for physical therapy were denied. He alleges Director Ferriter was the final technical denial he received.

Mr. Schilling provides no plausible basis upon which to believe physical therapy or any further treatment would be necessary or that it was deliberately

indifferent to deny such treatment.  As such, this claim will also be recommended for dismissal.

   **B.  Procedural Due Process Claims**

As Mr. Schilling was advised in the July 25, 2011 Order, to state a claim for a due process violation, a plaintiff must show (1) that he had a protected liberty interest, and (2) that he was deprived of that interest without adequate due process. If there is no liberty interest at stake, the Constitution does not require any process, and the second element becomes irrelevant.  See, e.g., Meachum v. Fano, 427 U.S. 215,  223-24 (1976); Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Erickson v. United States, 67 F.3d 858, 861 (9th Cir. 1995).

In order to establish a liberty interest, a plaintiff must demonstrate that prison officials imposed a hardship that is atypical and significant in relation to the ordinary incidents of prison life.  See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).

   **1. Disciplinary Segregation after Stabbing–Major Woods**

Mr. Schilling faults Major Woods for placing him in disciplinary segregation when the surgeon recommended he be placed in a secure observation area of the prison infirmary after he was stabbed in September 2010.  Mr. Schilling has failed to present sufficient facts to demonstrate that he was denied a liberty

interest as a result of his placement in disciplinary segregation. As such, the Constitution does not require process and this claim and Defendant Woods should be dismissed.

### 2. Disciplinary Hearing–Defendants Cosby and Beeson

Next, Mr. Schilling raises a procedural due process claim regarding his disciplinary hearing arising from the nurses' attempt to assess Mr. Schilling's shoulder on April 4, 2011.

In his original complaint, Mr. Schilling alleged he was placed in "the hole" and received a "write-up" which affected his "clear conduct." He did not define these terms and did not allege the discipline was atypical or significant. C.D. 2, pp. 4-5. In his Amended Complaint, Mr. Schilling provides even less information. He merely requests in the relief section that he wants back the month of clear conduct that he lost. The Court's prior Order informed Mr. Schilling that he needed to provide further information regarding the effect on his "clear conduct" including what is "clear conduct" and whether it has any effect on his term of incarceration. He did not do so.

Mr. Schilling has failed to present sufficient facts to demonstrate he was denied a liberty interest as a result of his disciplinary hearing. As such, the Constitution does not require process and this claim and Defendants Cozby and

Beeson should be dismissed.

## III. CONCLUSION

### A. Leave to Amend

Mr. Schilling has failed to state a claim upon which relief may be granted as set forth above. The defects discussed above cannot be cured by the allegation of additional facts and will be recommended for dismissal.

### A. "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim. 28 U.S.C. § 1915(g). This dismissal constitutes a strike because Mr. Schilling failed to state a claim upon which relief may be granted.

### B. Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

> [A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
> > (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed. R.App. P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  The good faith standard is an objective one.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous."  Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445).  For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact.  Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989); Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).

The finding that Mr. Schilling's Complaint fails to state a claim upon which relief may be granted is so clear no reasonable person could suppose an appeal would have merit.  Therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

It is **RECOMMENDED:**

1. This matter should be dismissed with prejudice for failure to state a claim upon which relief may be granted.  The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) based upon Mr. Schilling's failure to state a claim.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. Mr. Schilling's failure to state a claim is so clear no reasonable person could suppose an appeal would have merit. The record makes plain the Amended Complaint is frivolous as it lacks arguable substance in law or fact.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Schilling may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the

Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 13th day of December, 2011.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge